IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES A. HENSON, JR. | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-14-2131 |
| FRANK B. BISHOP, JR., et al., | * | |
| Defendants | * | |

### MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment field by Defendants Frank B. Bishop, Jr., Lt. William E. Miller, Major Robert M. Friend, Lt. Bradley Wilt, Sergeant Walter Iser, CO II Jesse L. Lambert, CO II Christopher Anderson, CO II Nicolas Soltas, and CO II Steven Miller. ECF No. 23. Plaintiff has responded. ECF Nos. 26 & 27.[1] Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be construed as a Motion for Summary Judgment and will be GRANTED.

### Background

The case was instituted upon receipt of a civil rights Complaint filed by Plaintiff James Henson, an inmate currently confined at the North Branch Correctional Institution ("NBCI"). ECF 1. Plaintiff alleges that Defendants have violated his constitutional rights. He claims that Defendants have conspired to have him murdered and have placed his life in danger by housing

---

[1] Plaintiff's Complaint and Response are difficult to decipher. To the extent Plaintiff raises any new issues in his response, those issues are not properly before the Court and will not be considered.

him with dangerous inmates. In general, as in numerous other Complaints filed by Plaintiff, he claims that Defendants continually place him in harm's way. *Id.*[2]

Plaintiff generally alleges falsification of incident reports and medical documents and claims that legal mail and materials have been withheld from him. ECF 1. Plaintiff claims that the foregoing conspiracy has been ongoing since 2005. *Id.*, p. 3.[3] He states that he was unable to pursue administrative remedies regarding his claims because Frank Bishop instructed staff not to provide him any administrative remedy forms. *Id.*, p. 2.

Plaintiff specifies that from 2005-2014, Defendants have deliberately instructed "racist-bigot corrupt guards" to house him with violent gang members, to tell each cellmate that Plaintiff

---

[2] Plaintiff previously filed suit regarding an assault as well as allegations concerning Correctional Officers Wilson, Merling, Lark and Weber assigning him to a cell with Inmate Jenkins, an alleged "professed racist." *See Henson v. Likin*, Civil Action No. RWT-11-2719 (D. Md.). Defendants were granted summary judgment in that case.

Plaintiff previously filed suit against CO II Jesse Lambert, CO II Nicholas Soltas, CO II Steven Miller, CO II Randolph Bennett, CO II Christopher Ortt, CO II Joshua Tart, and CO II Shawn Murray, alleging they assigned him to cells with gang members and advised gang members on the unit that Plaintiff was a rapist. He reiterated his claim regarding the assault by Jenkins and sought protective custody and a federal investigation. *See Henson v. Lambert*, Civil Action No. RWT-12-3271. Defendants were granted summary judgment in that case.

Plaintiff's previously filed suit against Lt. Dale Smith, Case Worker Gainer, Caseworker Sindy, Lt. Miller, Sgt. Iser, Sgt. Guilliam, Sgt. Tyndale, again alleging overall failure to protect and lack of a policy to address risks to Plaintiff's health and safety and an overarching conspiracy, was likewise dismissed. *See Henson v. Smith*, Civil Action No. RWT-13-2266 (D. Md.).

Other complaints raising bald conspiracy claims were recently dismissed *sua sponte* by the Court. *See Henson v. Wilt, et al.*, Civil Action No. RDB-14-3724 (D. Md.); *Henson v. Friend et al.*, Civil Action No. RDB-14-3825 (D. Md.), and *Henson v. Miller et al.*, Civil Action No. RDB-15-28 (D. Md.).

Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, *res judicata* is established. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d 243, 248 (4th Cir. 2005). The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.*, quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989).

[3] Citations are to the Court's electronic docket.

2

is a sex offender or child rapist, and to provide them weapons to use to attack Plaintiff. *Id.*, p. 3. Plaintiff alleges Defendants have falsified incident and medical reports "to indicate to the reader that [Plaintiff] was or had jeopardized someone's safety, or that I was non-compliant or was a threat to prison security, to help conceal 05-2014 pattern of abuse by staff, to divert the courts attention form the real issues in the case(s), and to manipulate public opinion through the media...." *Id.*

Plaintiff states that on June 20, 2014, Miller, Soltas, Lambert and Anderson made racial threats toward him and forced him into a cell with a violent gang member. *Id.*, p. 3. Plaintiff claims he was dragged into a cell with inmate Dana Brown, a violent, dangerous gang member whom he feared Defendants had "green lighted" to kill him. *Id.*

Plaintiff also claims that he is a target of a campaign of murder carried out by Untied States and Maryland government officials. Plaintiff indicated that on June 20, 2014, Defendants Miller, Soltas, and Lambert told him " your time's running out." *Id.* He states that he has remained on disciplinary segregation from March 27, 2006 to the date of the filing of his Complaint, with one hour daily out-of-cell recreation. *Id.*

Lastly, Plaintiff states that NBCI officers destroy his commissary forms requesting legal materials and withhold his outgoing and incoming legal mail. *Id.*

As in other Complaints filed by Plaintiff, he seeks protective custody, a conference with federal investigators, and a trial. He also seeks compensatory and punitive damages, legal fees and court costs. *Id.*

Defendants offer the following information. Plaintiff entered the Division of Correction on November 16, 2005. He was transferred to the Western Correctional Institution ("WCI") on

3

December 14, 2005 as a medium security inmate. He was transferred to NBCI on May 16, 2012, and returned to WCI on August 15, 2013. Plaintiff remained at WCI until June 20, 2014, when he was again transferred to NBCI. ECF 23-11; 23-1. The instant Complaint is dated June 24, 2014, and concerns events occurring at NBCI. ECF 1.

Defendants acknowledge that Plaintiff has filed numerous complaints alleging that he is at risk of assassination by a conspiracy of racist correctional officers and gang members. His claims have been investigated and found unsubstantiated, resulting in the dismissal of the claims both administratively and judicially. *See e.g. Henson v. Likin* Civil Action No. RWT-11-2719 (D. Md.); *Henson v. Miller*, Civil Action No. RWT-12-763 (D. Md.); *Henson v. Lambert*, Civil Action No. RWT-12-3271 (D. Md.); *See Henson v. Smith, et al.*, Civil Action No. RWT-13-2266 (D.Md.). Other than claiming that Defendants Miller, Soltas, and Lambert threatened that Plaintiff's "time [was] running out," Plaintiff has provided no specific allegation regarding the alleged conspiracy. ECF 1.

Defendants deny each of Plaintiff's claims. They aver that they have not instructed institutional personnel to house Plaintiff with violent, dangerous, affiliated gang members. They have never given instructions to tell any gang member that Plaintiff is a sex offender, nor do Defendants have any knowledge that any correctional officer provided an inmate with a weapon to attempt to murder Plaintiff. ECF 23-3 – 23-9.

Upon Plaintiff's return to NBCI on June 20, 2014, he was assigned to Housing Unit 2, Tier B, Cell 015B with inmate Brown. Brown is not a validate member of a security threat group ("STG"). ECF 23-11; ECF 23-2. No incident occurred from Plaintiff's assignment to the cell with Brown on June 20, to the filing of the instant complaint on June 24, 2014. ECF 23-2.

4

Plaintiff has a long history of rule infractions, (ECF 23-2, pp. 22-25; ECF 23-11) and is frequently the initiator of conflicts with staff and other inmates. *Id.* On July 24, 2014, Defendant Soltas and Officer Jason Frantz sought to place inmate Desmond Bright into Plaintiff's cell. ECF 23-2, pp. 2-7. As Soltas placed Bright into the cell and removed the handcuffs from Plaintiff, Plaintiff attacked Bright hitting him in the head and face while Bright remained handcuffed. *Id.* Soltas and Frantz directed Plaintiff to stop but Plaintiff refused. Frantz applied a burst of pepper spray and Plaintiff then stopped the assault and put his hand out of the cell door security slot to be handcuffed. Another officer handcuffed Plaintiff. Both inmates were removed from the cell, evaluated by medical staff, given a decontamination shower, and placed in separate cells. *Id.*

On July 28, 2014, Plaintiff reported that he was assaulted by his cell mate. ECF 23-2, p. 11. Wilt investigated the incident and noted that medical treatment was provided. The result of the investigation was inconclusive as to the cause of Plaintiff's injuries. *Id.*

On November 4, 2014, Plaintiff refused to be restrained to exit the cell while another inmate was being placed in the cell. ECF 23-2, pp. 15-20. Several attempts were made by staff to gain Plaintiff's compliance, to no avail. Security Chief William Bohrer authorized the use of Force. Jason Franz, an officer trained in confrontation avoidance, attempted to negotiate a peaceful resolution to the standoff, but his attempts failed. Pepper spray was sprayed into Plaintiff's cell and he then complied with the orders to be restrained. He was escorted to the medical room for evaluation and treatment for the pepper spray exposure. *Id.*

Defendants aver that they have never submitted any false incident reports nor have they encouraged any medical personnel to submit falsified medical reports. ECF 23-3 – 23-9. Defendants further aver that they did not refer to Plaintiff with racist language. *Id.* Iser avers that

5

before inmates are placed in a new cell, correctional staff check to see whether the inmate is affiliated with a gang to ensure that members from opposing gangs are not housed together. ECF 23-7. Additionally, staff review each inmates' documented enemies list to insure that known enemies are not placed together. *Id.*

Defendants also aver that they have never destroyed Plaintiff's commissary request forms or withheld his mail. ECF 23-3 – 23-9.

## Standard of Review

A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B. Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

6

is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus,

7

"the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

Defendants raise the affirmative defense of non-exhaustion and assert Plaintiff's claims have not been properly presented through the administrative remedy procedure and must be dismissed pursuant to 42 U.S.C. §1997e. ECF 23. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction

is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008); *see also Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015).

Thus, Plaintiff's claims must be dismissed if Defendants raise the affirmative defense and also prove that Plaintiff has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216 – 17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims,

9

appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). *See Moore*, 517 F. 3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F. 3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). Exhaustion is a precondition to filing suit in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (prisoner may not exhaust administrative remedies during the pendency of a federal suit).

Plaintiff indicates he has been prevented from filing Administrative Remedy Procedure complaints ("ARP"). ECF 1. He attaches copies of ARPs submitted by him in October and December, 2014, after the institution of this case, which were dismissed due to his exceeding the number of allowable ARPs. ECF 26-1, p. 4-7

From July 1, 2013 to June 30, 2014, Plaintiff filed 54 ARPs. ECF 23-2, pp. 26-32. Due to the abuse of the ARP process Plaintiff is limited to the number of ARPs permitted to be filed each month. *Id.* The evidence demonstrates that Plaintiff filed four ARPs at WCI in June of 2014, 7 ARPs in July of 2014, and 1 ARP in August of 2014. *Id.*, pp. 30-31. None of the ARPs

concern the allegations Plaintiff raises in the instant case. Plaintiff failed to initiate, much less exhaust, administrative remedies as to his Complaint before filing in the instant case. It is of note that Plaintiff signed the instant Complaint four days after his transfer to NBCI, thus providing no opportunity to pursue administrative remedies. Accordingly, Plaintiff's claims are unexhausted and subject to dismissal.

## Injunctive Relief

Lastly, Plaintiff is not entitled to any of the injunctive relief he requests. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). Plaintiff's requests for injunctive relief shall be denied, as he does not clearly establish that he would suffer immediate and irreparable injury, loss, or damage, if the relief requested is not provided.

Substantial deference is to be given to the judgment of prison administrators. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This deference is at its greatest when prison order is at stake. *See In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (2003). Plaintiff has failed to produce evidence that he is likely to suffer irreparable harm if this Court does not order protective custody. Moreover it is not the province of this Court to determine how a particular prison might be more beneficently

operated: the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995).

Similarly, Plaintiff's request that the court order a federal investigation is unavailable. The Court does not have the authority to direct prosecutors to prosecute a crime or to investigate possible criminal charges. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also U.S. v. Derrick*, 163 F. 3d 799, 825 (4th Cir. 1998). Plaintiff is, therefore, not entitled to injunctive relief and his requests for same shall be denied.

## Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be GRANTED. A separate Order follows.

July 30, 2015  
Date

_____  
RICHARD D. BENNETT  
UNITED STATES DISTRICT JUDGE